IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PEREESE JOAS,<br><br>                    Plaintiff,<br><br>         vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF THE ESPLANADE,<br><br>                    Defendant. | Civ. No. 19-00640 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 21 |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 21

### I. INTRODUCTION

Defendant Association of Apartment Owners of the Esplanade ("Defendant" or "the Esplanade") moves for summary judgment in this Title VII discrimination action brought by Plaintiff Pereese Joas ("Plaintiff" or "Joas"). Plaintiff's Complaint alleges two counts: (1) race-based discrimination in violation of Title VII, 42 U.S.C. §2000e et seq., and (2) unlawful retaliation.  ECF No. 1.  In response to the Motion, Plaintiff agreed that the retaliation claim should be dismissed for insufficient evidence, *see* ECF No. 26 at PageID #186, and thus the Motion is GRANTED as to Count II.

1

Defendant seeks summary judgment as to Count I on two grounds: (1) it is time-barred, and (2) there is no evidence of the required nexus to interstate commerce. The court DENIES the Motion as to the first ground because there is a genuine issue of material fact as to timeliness, i.e., whether Plaintiff's December 5, 2017 intake questionnaire constitutes a timely charge of discrimination. The court DEFERS a decision on the second ground (nexus to interstate commerce), pending discovery for Plaintiff to satisfy his "very low" burden to establish that the Esplanade is in an "industry affecting commerce." *E.E.O.C. v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990).

## II. DISCUSSION

### A. Background

Plaintiff resigned from his position as a security guard at the Esplanade on March 4, 2017. ECF No. 26-2 at PageID #201. On December 5, 2017 (276 days after his resignation), Plaintiff, proceeding pro se, submitted an inquiry questionnaire to the Equal Employment Opportunity Commission ("EEOC"). ECF No. 21-8. The questionnaire form states on the bottom of each page in capital letters that "This Questionnaire is not a Charge of Discrimination." *Id.* at PageID #110-13. Plaintiff identified himself as "Black or African American," and his prior employer as the Esplanade, with a number of employees as "15-100." *Id.* at PageID #110. The questionnaire included Plaintiff's

identifying information, the address and identifying information regarding employees of the Esplanade, and described some of the alleged unlawful employment practices. *Id.* at PageID #110-113. Plaintiff identified another Black employee who "also was targeted and had racist remark[s] [made] toward him." *Id.* at PageID #112. He stated that "Hugh Fraser made racist comment toward me." *Id.* at PageID #113.

To support the questionnaire, Plaintiff included a copy of his March 4, 2017 resignation letter in which he gave several reasons for resigning, including: (1) "I can no longer tolerate the racist comments and microaggressions made towards me and the security supervisor;" (2) "I felt disrespected when [Board President] Hugh Fraser expected several times that I cater to his demands. Additionally, I do not appreciate when he calls me 'boy' and not by my name;" and (3) "It is disheartening to work in this discriminatory and degrading environment." ECF No. 26-2 at PageID #201.

He also included some "log notes about incidents involving Mr. Fraser," ECF No. 26-1 at PageID #198, which read, for example, that (1) "Mr. Fraser said [to him] . . . I didn't see you until you smile," ECF No. 26-3 at PageID #203; (2) called him "[b]oy," and (3) told him he "would be better off with a colored girl . . . and not my Asian girlfriend." *Id.* at PageID #204. He also

complained that Fraser told him "you smell just like your people." *Id.* at PageID #205.

Plaintiff had an intake interview on January 4, 2018. In addition to the incidents mentioned in the questionnaire or attachments, the interview discussed other alleged incidents by Plaintiff, including (1) Fraser told Plaintiff and his father "we will do what he says or that our 'colored' ass won't have a job;" (2) Fraser "told us not to call him sir but to call him 'master,' and "handed us a picture of three black people in chains," and (3) Fraser referred to "an African-American resident as a colored-man." ECF No. 26-4 at PageID #207.

Following the interview, the EEOC prepared a formal charge of discrimination against the Esplanade, which Plaintiff signed on January 5, 2018—307 days after his resignation from his position with the Esplanade. ECF No. 21-6 at PageID #107.[1] Although it was signed on January 5, 2018, the charge bears a stamp "received" by "EEOC HLO" on January 23, 2018. *Id.* After an investigation, the EEOC issued a right-to-sue letter on August 30, 2019 without making any findings. ECF No. 21-13 at PageID #158. Plaintiff filed suit on November 27, 2019. ECF No. 1.

---

[1] Plaintiff was apparently relying on the EEOC to prepare the charge based on the intake interview. That is, he could not have bypassed the EEOC intake process and filed a charge on his own. The date to file a timely charge appears to have passed between the time Plaintiff filed his questionnaire and when he was interviewed by the EEOC.

**B.     Statute of Limitations**

In a "worksharing" jurisdiction, such as Hawaii, a plaintiff has 300 days from the last alleged unlawful employment practice to exhaust administrative remedies by filing a charge of discrimination with the EEOC or the Hawaii Civil Rights Commission. *See, e.g.*, *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge.") (citing 42 U.S.C. § 2000e-5(b)); *E.E.O.C. v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1193 (D. Haw. 2012) ("Title VII extends the 180-day period [in § 2000e-5(e)(1)] to 300-days if filed in a 'worksharing jurisdiction.'") (citations omitted). The charge-filing period "is not a jurisdictional prerequisite to filing a Title VII suit. Rather it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)).

A plaintiff must then file suit within ninety days from when the EEOC issues a right to sue letter. *See, e.g., Pratt v. Haw., Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1142 (D. Haw. 2018). The purpose of these requirements is to "giv[e] the charged party notice of the claim and 'narrow[] the issues for prompt

5

adjudication and decision.'" *B.K.B.*, 276 F.3d at 1099 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

Because Plaintiff's formal EEOC charge of discrimination was filed more than 300 days from Plaintiff's resignation on March 4, 2017, Defendant argues that this suit is time-barred. Plaintiff responds by arguing that the EEOC intake questionnaire—which was filed on December 5, 2017 (within 300 days)—satisfies the "charge" requirement. *See, e.g.*, *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (holding that an intake questionnaire may qualify as a charge if it satisfies the EEOC's regulatory requirements and if it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee").[2]

---

[2] The EEOC's regulations describe the requirements for "contents of charge" as follows:

(a) Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(continued . . .)

Here, although the form Plaintiff used for his December 5, 2017 intake questionnaire stated in all capital letters that "This Questionnaire is not a Charge of Discrimination," it contains all the requirements of 29 C.F.R. § 1601.12. It identifies parties, addresses, and number of employees of Defendant. And, especially when considering the attachments,[3] it includes a clear statement of the facts constituting the discrimination that is "sufficiently precise to identify the parties," and "describe[s] generally the actions and practices complained of." *Id.* Finally, it can "be reasonably construed as a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402.[4]

---

      (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

      (b) *Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.* A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12 (emphasis added).

  [3] The court is not limited to the information on the form itself. *See Holowecki*, 552 U.S. at 405 (considering that "the completed questionnaire . . . was supplemented with a detailed six-page affidavit" in analyzing whether a questionnaire could be considered a "charge").

  [4] *Holowecki* observed that "[t]here might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is

(continued . . .)

7

The court is thus left with conflicting evidence—the EEOC statement that the questionnaire is not a charge of discrimination and the fact that the questionnaire (and its attachments) satisfy the requirements of 29 C.F.R. § 1601.12.  And, in the end, the EEOC's characterization of the questionnaire is not by itself controlling.  *See E.E.O.C. v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020) ("Ultimately, the EEOC's characterization of the questionnaire is not dispositive.  What constitutes a charge is determined by objective criteria.") (citing *Holowecki*, 552 U.S. at 404).  Given this conflicting evidence at this summary judgment stage, timeliness remains a question of fact. *See, e.g.*, *Jou v. Adalian*, 2017 WL 2990280, at *8 (D. Haw. July 13, 2017) (denying summary judgment given disputes of material fact as to timeliness).[5]

## C. Interstate Commerce

Title VII prohibits discrimination by an "employer" on the basis of protected categories, and defines an "employer" as, in part, "a person engaged in an industry affecting commerce who has fifteen or more employees[.]"  42 U.S.C.

---

requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge."  552 U.S. at 405.

[5] The court rejects Defendant's argument that the court must give deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the EEOC's application or interpretation of Title VII that the EEOC charge was time-barred.  Even assuming the doctrine could apply to such a determination, here, the EEOC made no findings at all—it only issued a right-to-sue letter.  At most, Defendant points to an internal email of an EEOC investigator, *see* ECF No. 21-12 at PageID #157.  But an email is not a factual finding, must less something to which the court must give deference.

§ 2000e(b). Defendant contends that it is not "engaged in an industry affecting commerce," arguing that Plaintiff "is unable to prove he either (1) worked for an instrumentality of interstate commerce, (2) regularly used the instrumentalities of interstate commerce, or (3) engaged in an activity bearing a substantial relation to interstate commerce." ECF No. 21-1 at PageID #95-96. In response, Plaintiff proffered no evidence at all, arguing only that the "affects commerce" requirement is easily met. *See* ECF No. 26 at PageID #195 (citing *Ratliff*, 906 F.2d at 1316) ("The 'affects commerce' jurisdictional obstacle is very low indeed.").

And it is true that the Supreme Court interpreted the term "industry affecting commerce" to "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." *Ratliff*, 906 F.2d at 1316 (quoting *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963)). The "affects commerce" element can easily be satisfied, for example, "[i]f the defendant uses items that have moved through interstate commerce at some point in their lives . . . or serves persons from out of state . . . or engages in activity that, even if purely local, would alter the relationships of an interstate market." *Id.* (quotations omitted). "[G]iven how little it takes to establish [the requirement]," *id.* at 1317, it is "rare . . . for the 'affects commerce' requirement to pose a bar to suit." *Id.*

But even if it doesn't take much, once the argument is properly raised at summary judgment (and the movant has met its burden), the burden is then on

the non-moving party to come up with some evidence to create a genuine issue of material fact. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial.") (citation, internal quotation signals, and emphasis omitted).[6]

Although Plaintiff failed to produce any evidence to dispute Defendant's argument—as the court discussed with the parties at the hearing on the motion—the court is very hesitant to dismiss this action based solely on counsel's apparent misinterpretation of Plaintiff's burden, especially given the minimal showing necessary to at least create a triable issue regarding whether the Esplanade is in an industry "affecting commerce." Accordingly, the court will DEFER ruling on whether Defendant is engaged in an industry affecting commerce. *See* Fed. R. Civ. P. 56(d) & (e)(1). The court will allow Plaintiff to

---

[6] Plaintiff argues that it need not produce evidence because Defendant did not meet its *initial* burden to prove that it was not in an industry affecting commerce. He relies on a statement from *Ratliff* that "at the summary judgment stage, it was [defendant's] burden, as the moving party, to show that there was no genuine issue of material fact." 906 F.2d at 1317. But that statement in *Ratliff* does not mean that a movant must meet its summary judgment burden with *evidence*. Rather, it is fundamental that a movant may meet its initial burden by pointing to an absence of evidence from the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

conduct minimal discovery into the nature of Defendant's business and industry to address this requirement.  If Defendant continues to believe that Plaintiff cannot prove that it should be subject to Title VII liability as an industry that does not affect interstate commerce, it may re-new its summary judgment motion at an appropriate time (limited to this single issue).

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to Count II (retaliation), and DENIED as to Count I (race discrimination).  The court DEFERS the question whether the Defendant is in an industry that affects commerce.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 25, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Joas v. Ass'n of Apt. Owners of the Esplanade*, Civ. No. 19-00640 JMS-KJM, Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, ECF No. 21